# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. GRADFORD, | 1:17-cv-00414-DAD-GSA-PC |
| Plaintiff, | **SECOND SCREENING ORDER** |
| v. | **ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND (ECF No. 29.)** |
| STANISLAUS COUNTY SHERIFFS DEPARTMENT, et al., | |
| | **THIRTY-DAY DEADLINE TO FILE THIRD AMENDED COMPLAINT** |

## I. BACKGROUND

William J. Gradford ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On March 22, 2017, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) On August 31, 2018, Plaintiff filed the First Amended Complaint as a matter of course. (ECF No. 26.) The court screened the First Amended Complaint pursuant to 28 U.S.C. § 1915 and issued an order on April 3, 2018, dismissing the First Amended Complaint for failure to state a claim, with leave to amend. (ECF No. 28.)

1

On April 16, 2018, Plaintiff filed the Second Amended Complaint, which is now before the court for screening. 28 U.S.C. § 1915.

## II. SCREENING REQUIREMENT

The *in forma pauperis* statute provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678; Moss v. U.S. Secret Service, 572 F.3d 962,

969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

**III. SUMMARY OF SECOND AMENDED COMPLAINT**

Plaintiff is a state prisoner incarcerated at Mule Creek State Prison in Ione, California, in the custody of the California Department of Corrections and Rehabilitation. The events at issue in the Second Amended Complaint allegedly occurred at the Stanislaus County Safety Center in Modesto, California, when Plaintiff was detained there as a pretrial detainee in the custody of the Stanislaus County Sheriff. Plaintiff names as defendants the Stanislaus County Sheriff's Department, Deputy Mejia, and Deputy YouseFPoor (collectively, "Defendants").

Plaintiff alleges as follows.[1]

On December 6, 2016, as Plaintiff and other inmates were waiting in the court's prisoner holding tank to be seen by the judge, Deputy Teixeira [not a defendant] threw prisoner Ibanez against the wall while Ibanez was having a seizure on the floor, unresponsive. Plaintiff politely told Teixeira that what he had just done was wrong, and that Plaintiff was going to file a grievance against him for that. Deputy Teixeira said that Plaintiff would be next if he reported it. Very soon afterward, Deputy Teixeira moved Plaintiff out of the holding tank and escorted him to the court's hallway tunnel, in co-deputy McCarthy's [not a defendant] area. About 3-5 feet from McCarthy's desk, Teixeira questioned Plaintiff and asked him what he had seen regarding Ibanez. Plaintiff was chained to the metal benches. Deputy McCarthy interrupted Deputy Teixeira and clearly and loudly stated, "Gradford! If you know what's good for you, you would keep your mouth shut." ECF No. 29 at 8:23-24. Plaintiff filed a grievance against Deputies Teixeira and McCarthy.

Word quickly spread through the jail. Plaintiff was badly abused, mistreated, and retaliated against, including by defendant Deputy YouseFPoor. Plaintiff constantly pleaded for higher-ranking officials to stop the revenge by deputies against Plaintiff but higher officials allowed and would not stop the revenge, being fully aware and notified verbally and in writing

---

[1] The court has made an effort to list Plaintiff's allegations in chronological order, for clarity.

by Plaintiff multiple times in the Unit E interview room. Plaintiff desperately wrote statements and reports to about 40 different government agencies, including the White House, the President of the United States, and the NAACP about all of the revenge constantly against him because of Deputies Teixeira and McCarthy. Death threats by two sworn officers and revengeful acts by other deputies caused Plaintiff continuing fear. Plaintiff was also afraid because a few years ago an African-American Stanislaus County Deputy Sheriff Scott was killed by his own in-house white deputy sheriffs. Plaintiff is also African-American. Plaintiff wonders what more the deputies will do to him, being an African-American prisoner reporting their threats, abuse, and revenge. Lt. Kirt [not a defendant] told Plaintiff during an interview that all of Plaintiff's complaints against his deputies were in the newspaper. Plaintiff has a written statement by Lt. Kirt that all of Plaintiff's complaints were investigated and heard in the superior court, and the court made a decision of "no rulings." ECF No. 29 at 11:12.

On March 29, 2017, defendant Deputy Mejia retaliated against Plaintiff by opening Plaintiff's incoming mail from the U.S. District Court outside of Plaintiff's presence and without his permission. Deputy Mejia only did this once, but he and all other deputies were told not to do so. Defendant Mejia was fully aware that Plaintiff reported against other deputies, including against Deputies Teixeira and McCarthy on December 5, 2016. Defendant Mejia has never done anything against Plaintiff in his presence, unlike other deputies. He is a very direct deputy and highly respected by Plaintiff. Defendant Mejia was aware of other deputies' revenge against Plaintiff, and was involved to an extent.

On March 31, 2017, defendant Deputy YouseFPoor sought revenge against Plaintiff by purposely opening Plaintiff's two incoming letters from the U.S. District Court in Fresno, California, out of Plaintiff's presence and without his permission. Defendant YouseFPoor had been told by higher ranking staff not to do so.

Before and after March 31, 2017, defendant YousefPoor repeatedly harassed, intimidated, and mocked Plaintiff, causing fear and seeking revenge against Plaintiff in every way to prevent Plaintiff from speaking up, reporting, and filing grievances against him and other deputies for their revengeful acts against Plaintiff. On Friday night soon after March 31,

2017, defendant YouseFPoor came upstairs to Plaintiff's cell door with Deputy McDougall [not a defendant] to unlock the door with his key so Plaintiff could retrieve his clean clothes from downstairs. Just before deputy YouseFPoor opened the door, he and Deputy McDougall harassed Plaintiff. Defendant YouseFPoor walked back downstairs while Deputy McDougall stood outside the cell door, got approximately five blank grievance forms out of his desk, walked back upstairs to the cell, opened the door and handed Plaintiff the forms while Deputy McDougall laughed. Plaintiff had not asked for the grievance forms.

Defendant YouseFPoor purposely unlocked the automatic door to Plaintiff's cell from his stationed desk and had Plaintiff walk downstairs to retrieve his dinner tray. (On lockdowns, the jail mandates cell feed and inmates are not allowed at any time to come out of the cell during a lockdown.) As Plaintiff was walking down the stairs defendant YouseFPoor started yelling at Plaintiff with extremely violent behavior and gestures. Plaintiff was extremely shocked and surprised because he was only following defendant YouseFPoor's orders. Plaintiff is a model inmate at all times, with great fear because defendant YouseFPoor was constantly seeking revenge against Plaintiff to prevent him from filing grievances. Plaintiff immediately went back to his cell. Plaintiff had never resisted defendant YouseFPoor or any other deputy, or given them a problem or issue the entire time he was at the jail. The only reason that defendant YouseFPoor was seeking revenge against Plaintiff was to prevent him from filing grievances against him and his co-deputies for their revengeful acts.

Plaintiff filed a restraining order against Deputies Teixeira and McCarthy in the Stanislaus County Courthouse and sat in court on May 9, 2017, with Teixeira and their city attorney (McCarthy did not show). The presiding judge clearly stated to Teixeira's city attorney that she (judge) believes something did happen.

Plaintiff seeks a declaratory judgment, costs of suit, attorney's fees, and monetary damages, including punitive damages.

### IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Rights of Pretrial Detainees

Plaintiff was a pretrial detainee at the time of the events at issue. "[P]retrial detainees . . . possess greater constitutional rights than prisoners." Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992); see also Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir.

1987). A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pre-trial detainees. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008); Lolli v. Cnty. of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003); Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996); Anderson v. Cnty. of Kern, 45 F.3d 1310, 1312-13 (9th Cir. 1995); Maddox v. City of Los Angeles, 792 F.2d 1408, 1414-15 (9th Cir. 1986). For example, where the pretrial detainee is claiming that prison officials are liable for a breach of the duty to protect the detainee from attack by other inmates and detainees, the court should utilize Eighth Amendment standards. See Redman v. Cnty. of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc); see also Pierce, 526 F.3d at 1209-13 (explaining that detainees in administrative segregation are entitled under the First and Eighth Amendments to ongoing participation in religious activities and adequate opportunities for exercise); Johnson v. Meltzer, 134 F.3d 1393, 1398 (9th Cir. 1998) (stating that Eighth Amendment establishes minimum standard of medical care for pretrial detainees).

Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate pretrial detainees' right to be free from punishment. See Block v. Rutherford, 468 U.S. 576, 584 (1984) (citing Bell v. Wolfish, 441 U.S. 520, 538-39 (1979)); Pierce, 526 F.3d at 1205; Demery v. Arpaio, 378 F.3d 1020, 1028-29 (9th Cir. 2004) (holding that streaming live images of pretrial detainees to internet users around the world through the use of world-wide web cameras was not reasonably related to a non-punitive purpose, and thus, violated the Fourteenth Amendment); Simmons v. Sacramento Cnty. Super. Ct., 318 F.3d 1156, 1160-61 (9th Cir. 2003); Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002); White v. Roper, 901 F.2d 1501, 1504 (9th Cir. 1990); see also Florence v. Board of Chosen Freeholders of Cnty. of Burlington, 132 S. Ct. 1510, 1515-16 (2012). Order and security are legitimate penological interests. See White, 901 F.2d at 1504.

**B.** **Defendant Stanislaus County Sheriff's Department -- Monell Liability**

Plaintiff names the Stanislaus County Sheriff's Department as a defendant.

///

Plaintiff cannot maintain a municipal liability claim in the absence of an underlying constitutional violation. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010). A local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Webb v. Sloan, 330 F.3d 1158, 1163–64 (9th Cir. 2003); Gibson, 290 F.3d at 1185. Rather, a local government unit may only be held liable if it inflicts the injury complained of. Monell, 436 U.S. at 694; Gibson, 290 F.3d at 1185.

Generally, a claim against a local government unit for municipal or county liability requires an allegation that "a deliberate policy, custom, or practice . . . was the 'moving force' behind the constitutional violation . . . suffered." Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007); City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989). Alternatively, and more difficult to prove, municipal liability may be imposed where the local government unit's omission led to the constitutional violation by its employee. Gibson, 290 F.3d at 1186. Under this route to municipal liability, the "plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." Id. Deliberate indifference requires a showing "that the municipality was on actual or constructive notice that its omissions would likely result in a constitutional violation." Id.

Plaintiff names the Stanislaus County Sheriff's Department as a defendant, but does not include any specific factual allegations of a policy or custom that was the "moving force" behind the constitutional violation asserted, or allege facts showing that an omission by the Sheriff's Department caused the individual deputy defendants to commit a constitutional violation against Plaintiff. In fact, Plaintiff makes no allegations against the Sheriff's Department in the Second Amended Complaint. Therefore, Plaintiff fails to state a cognizable Monell claim against the Stanislaus County Sheriff's Department.

Plaintiff did not name the Stanislaus County Sheriff's Department as a defendant in his prior complaint, and so the court did not advise Plaintiff about <u>Monell</u> liability in the first screening order. Therefore, Plaintiff shall be granted another opportunity to amend the complaint to cure the deficiencies in this claim found by the court in the Second Amended Complaint.

### C. **First and Sixth Amendment Mail Protections**

Plaintiff brings a First Amendment claim alleging that his incoming mail rights were violated. Prisoners have "a First Amendment right to send and receive mail." <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Nevertheless, correctional institutions and jails have a legitimate government interest in imposing certain restraints on inmate or detainee correspondence to maintain order and security. <u>See</u> <u>Procunier v. Martinez</u>, 416 U.S. 396, 413 (1974), overturned on other grounds by <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989). For example, inmates and detainees may have their mail screened to ensure that there is no contraband inside. <u>Mangiaracina v. Penzone</u>, 849 F.3d 1191, 1195 (9th Cir. 2017).

When incoming mail is legal mail, there are heightened concerns with allowing prison officials unfettered discretion in opening and reading an inmate's mail. Prisoners have a Sixth Amendment right to confer privately with counsel and the practice of opening legal mail in the prisoner's presence is specifically designed to protect that right. <u>Id.</u> at 1196-97 (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation); <u>Hayes v. Idaho Corr. Ctr.</u>, 849 F.3d 1204, 1210 (9th Cir. 2017) (prisoners have a First Amendment right to have their properly marked legal mail, including civil mail, opened in their presence). "A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense." <u>Id.</u> at 1198 (quoting <u>Nordstrom v. Ryan</u>, 762 F.3d 903, 910 (9th Cir. 2014)).

"Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." <u>Keenan v. Hall</u>, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's

files." Id. at 1094 (citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987)).

In this case, Plaintiff alleges that defendants Mejia and YouseFPoor opened and read Plaintiff's incoming mail from the U.S. District Court outside of Plaintiff's presence and without Plaintiff's permission. Because Plaintiff's mail was from the court it is not considered "legal mail" and does not have the same protections as legal mail. Therefore, Plaintiff fails to state a claim under the First or Sixth Amendments for interference with his mail.

**D.    Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

As discussed by the Ninth Circuit in Watison v. Carter:

> "A retaliation claim has five elements. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's

10

> actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir.1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff alleges that defendants Mejia and YouseFPoor retaliated against him by tampering with his mail and harassing him because Plaintiff reported an assault by Deputy Teixeira against another inmate, witnessed by Plaintiff on December 5, 2016. Plaintiff then filed a grievance against Deputies Teixeira and McCarthy for their threats against Plaintiff. Plaintiff also alleges that defendant YouseFPoor retaliated against him to prevent him from filing grievances against him (YouseFPoor) and his co-deputies for their revengeful acts.

In one incident, Plaintiff alleges that Deputies YouseFPoor and McDougall came to his cell to unlock the cell door so Plaintiff could retrieve his clean clothes from downstairs. Before opening the cell door, defendant YouseFPoor walked back downstairs, got approximately five blank grievance forms out of his desk, came back to Plaintiff's cell and gave Plaintiff the blank grievance forms, which Plaintiff had not asked for, while Deputy McDougall stood there laughing. This incident may rise to the level of an adverse action for purposes of retaliation. However, Plaintiff has not alleged that his First Amendment rights were chilled by the officers' conduct.

Harassment, tampering with mail, and intimidation are generally known as adverse actions. In order to prove causation in a retaliation claim, a prisoner must show that the protected conduct was a "substantial or motivating factor" for the alleged retaliatory action. Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997). Plaintiff alleges that his mail was tampered with and he was generally harassed, intimidated, and mocked, but he has not alleged sufficient facts for the court to find that specific adverse actions were taken against him, or to

find a causal connection between those actions and Plaintiff's exercise of protected First Amendment rights. Further, Plaintiff's fear of retaliation and his speculation about the deputies' motives do not plausibly show that any such connection existed. Therefore, Plaintiff fails to state a claim for retaliation. Plaintiff shall be granted leave to file an amended complaint addressing the deficiencies in this claim found by the court.

### E. Plaintiff's References in the Second Amended Complaint to Other Cases and Evidence Not Submitted

In the Second Amended Complaint, Plaintiff refers to other cases and evidence that was not submitted with the Second Amended Complaint. Examples follow.

    (1)    "(Please see other pending U.S. District Court Fresno Related Cases)." (ECF No. 29 at 6.)

    (2)    "(Please see tunnel cameras, on Dec 5, '16)." (ECF No. 29 at 8.)

    (3)    "(Please see the Modesto Bee , Modesto CA)." (ECF No. 29 at 11.)

    (4)    "(Please see court record/recordings)." (ECF No. 29 at 12.)

    (5)    "(Please see U.S. District Court pending claims/cases.)" (ECF No. 29 at 12.)

Plaintiff may not add information to his complaint in this manner. Any information Plaintiff wishes the court to consider must be included in the complaint or attached as exhibits to the complaint. The court only considers the complaint itself and attached exhibits filed together at the court, not outside evidence mentioned in passing. To incorporate exhibits into the complaint, Plaintiff should refer to the pertinent exhibits in the body of the complaint. Fed. R. Civ. P. 10(c).

Plaintiff is also advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself *without reference to the prior or superceded pleading*. (emphasis added.) Local Rule 220.

### V. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims against either defendant Mejia or defendant YouseFPoor in the Second Amended

Complaint. Therefore, the court shall dismiss the Second Amended Complaint, with leave to file a Third Amended Complaint curing the deficiencies in Plaintiff's claims found by the court.

///

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The court will provide Plaintiff with time to file a Third Amended Complaint curing the deficiencies identified above. Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on March 22, 2017.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey, 693 F. 3d at 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Second Amended Complaint is dismissed for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a Third Amended Complaint curing the deficiencies identified in this order;
4. Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:17-cv-00414-DAD-GSA-PC; and
5. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated: __**August 20, 2018**__  /s/ Gary S. Austin
UNITED STATES MAGISTRATE JUDGE